**PETROLEUM IRON WORKS CO., Inc., v. WRIGHT.**

(Circuit Court of Appeals, Eighth Circuit. April 13, 1925. Rehearing Denied June 18, 1925.)

No. 6674.

1. **Master and servant** &#8658;107(5), 150(5) — **Rules relieving master from duty to provide reasonably safe place and to warn servant of dangers held inapplicable.**

Where employee, engaged in constructing roof on oil tank, slipped and fell through failure of other employees to nail planks previously laid, *held*, that rule relieving master from duty to provide safe place to work, where work involves constant change of situation, and rule that in work of such character there is no duty to warn servant against danger resulting from such changes, were inapplicable.

2. **Appeal and error** &#8658;1078(3)—**Contention not raised or suggested in printed brief or argument will be deemed abandoned and disregarded.**

Contention as to variance, not raised or suggested in printed brief or argument, will be deemed abandoned and disregarded.

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Suit by Willis C. Wright against the Petroleum Iron Works Company, Inc. Judgment for plaintiff, and defendant brings error. Affirmed.

Harry Preston Lawther, of Dallas, Tex. (Beeman Strong, of Houston, Tex., on the brief), for plaintiff in error.

Huey P. Long, of Shreveport, La. (McKay & Smith, of Magnolia, Ark., and Smead & Meek, of Camden, Ark., on the brief), for defendant in error.

Before STONE and LEWIS, Circuit Judges, and SCOTT, District Judge.

STONE, Circuit Judge. This is a writ of error by the defendant from a judgment for personal injuries. The accident occurred in connection with roofing a large oil tank. The company was constructing, in the state of Arkansas, an oil tank about 140 feet in diameter. This work had progressed to the point where the roof was being put on. The roof construction was in the manner following: Uprights were placed at various points between the rim and center of the tank; on these uprights, blocks of wood were placed; on these blocks and posts, connecting rafters were placed in lines extending from the rim of the tank to the center; on these rafters, board sheeting was placed; on top of this sheeting, tar paper was then laid and, thereon the steel covering of the tank. At the time of this accident, the board sheeting was being placed and it was in connection therewith that Wright was injured. The method of putting on this sheeting was as follows: It was being laid in sections, three rafters wide, from the rim towards the center. Some of the sections were fairly complete, but the particular section upon which Wright was working was about one-third completed from the rim. Workmen would carry a plank, place it just above the last plank laid so that one end of the plank he was laying could be conveniently mitered to fit the center of the top of the rafter at that end and he would then drive a nail through the board and into the center rafter to hold the plank in place. Shortly afterwards, another workman would come with a power saw, miter one end of the planks and saw the opposite end, so that it would cover one-half of the edge of the rafter. The ends of the planks would then be nailed in place. The rafters were two inches wide across the edge.

The accident happened as follows: Plaintiff and a fellow laborer (Stout) were engaged in carrying planks from the rim of the tank, about 16 feet, to where they were put in place. The work had just begun for the day, Stout having carried two planks and the plaintiff, having thrown aside one defective plank, was carrying his first plank. When he was somewhere near or toward the edge where the planks were being laid down, he stepped upon the end of a plank which had

been laid. That end and an adjacent plank slipped from place, precipitating him to the ground. The only dispute as to any material fact in this case is as to the location of the planks which slipped. Some of the witnesses say that these planks were the first planks laid by Stout that morning and the one just back of it. Others say that it was two planks which were from six to eight planks down from the edge of the section being laid.

Plaintiff in error argues here three points which, in their essence, embody two propositions. The first (points 1 and 2) is that the rule requiring the master to provide a safe place for an employee to work does not apply to a situation where the work being done is construction and where the proper doing of that work involves a constant change of situation affecting the safety of the employee engaged in that construction. The second point is that where the work is of the character just outlined, there is no duty to warn the servant against the dangers resulting from such changes.

[1] It may be true that dangers to workmen necessarily or usually caused by changes arising in the ordinary progress of construction are perils which are a part of the employment. Also, if such perils are evident and open to the observation and knowledge of a workman using ordinary care and caution, there need be no warning of such given by the master. It seems to us, however, that neither of those rules is applicable to the facts of this case. The thing which caused the accident here was not a change brought about by the progress of the work but it was a lack of care in some workman who failed to nail these boards as they should have been nailed in the ordinary way in which that work was being done. It is argued for the company that the accident was caused by Wright stepping upon these loose boards in the slight interval of time before the laying of them by Stout and his nailing them. We think this argument finds no basis in the evidence. The testimony is that the customary way of doing this work was for a workman who laid a plank to nail the center of that plank before doing anything else. If this had been done, even the boards which Stout laid could not have slipped. Moreover, it was the first board which Stout had laid and one back of that, which had apparently been laid the day before or two boards further down, both of which had been laid the day before, which slipped.

[2] Plaintiff in error suggests, in verbal argument, that there was a fatal variance between the pleadings and the case submitted in the charge, in that the pleadings were based upon a failure to furnish a safe place to work while the charge was of a failure to warn of the unsafe conditions. Whatever may be the merit of that contention, we think it was clearly abandoned. It is nowhere raised or suggested in the printed brief or argument and should not be regarded now.

The judgment should be and is affirmed.